Luther T. ROUSE, as Administrator of the Estate of Jeptha L. Cobb, and Volkswagen Insurance Company, Plaintiffs,

v.

GREYHOUND RENT–A–CAR, INC., a Florida corporation, et al., Defendants.

No. 73–60–Orl–Civ.

United States District Court, M. D. Florida, Orlando Division.

Sept. 25, 1973.

George T. Eidson, Jr., and Roland A. Sutcliffe, Jr., of Akerman, Senterfitt, Eidson & Wharton, Orlando, Fla., for plaintiffs.

Thomas L. Clarke, Jr., and Robert L. Trohn, Langston, Massey, Trohn, Clarke & Bertrand, Lakeland, Fla., for Greyhound & Old Republic.

James W. Smith, Hoffman, Hendry, Parker, Smith & Anderson, Daytona Beach, Fla., for Lakeland Auto, Manheim and St. Paul Fire.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

REED, District Judge.

This cause came on for final hearing before the Court, without a jury, commencing on the 17th day of September 1973, and the Court, after having heard testimony of witnesses and considered documentary evidence, makes the following findings of fact and conclusions of law in accordance with Rule 52, F.R. Civ.P.:

### Findings of Fact

1. The plaintiffs in this case are Luther T. Rouse, as Administrator of the Estate of Jeptha L. Cobb, deceased, and Volkswagen Insurance Company. Luther T. Rouse is a citizen and resident of Georgia. Volkswagen Insurance Company is a Missouri corporation. The defendants in this action are Greyhound Rent-A-Car, Inc., a Florida corporation; Old Republic Insurance Company, a Pennsylvania corporation; Lakeland Automobile Auction, Inc., a Florida corporation; Manheim Services Corporation, a Delaware corporation; and St. Paul Fire and Marine Insurance Company, a Minnesota corporation.

2. On 11 July 1971, Jeptha L. Cobb negligently operated a Ford Torino automobile on the public highways of Volusia County, Florida, in such a manner as to cause the said vehicle to collide with another vehicle causing death and injuries to persons not parties to this litigation. Such persons are herein referred to as "injured persons." When the accident occurred, Mr. Cobb was transporting personal friends back to their homes, after he and they had been at Daytona Beach, Florida, for purposes of an outing for personal pleasure. Neither the outing nor the return trip was a business venture. At the time of the accident, Mr. Cobb was not acting within the course or scope of any agency or employment. Legal title to the vehicle which Mr. Cobb was driving at the time of the accident was held by the defendant Greyhound Rent-A-Car, Inc.

3. With respect to liability for personal injuries arising out of the aforesaid accident, Jeptha L. Cobb was an insured under a policy of liability insurance issued by the plaintiff Volkswagen Insurance Company. An abstract of such policy is in evidence as Plaintiffs' Exhibit 1. With respect to its liability for personal injuries arising out of the accident, Greyhound Rent-A-Car, Inc. is an insured under a policy of liability in-

surance issued by Old Republic Insurance Company, a copy of which is in evidence as Plaintiffs' Exhibit 4. Lakeland Automobile Auction, Inc., a Florida corporation owned by Manheim Services Corporation, a Delaware corporation, is an insured with respect to such liability under a policy of liability insurance written by defendant St. Paul Fire and Marine Insurance Company, a copy of which is in evidence as Plaintiffs' Exhibit 2.

4. The defendant Lakeland Automobile Auction, Inc., at and prior to the time of the accident, was engaged in the business of selling automobiles on a wholesale basis to automobile dealers. This business was conducted in Lakeland, Florida and was operating under the name of Lakeland Automobile Auction. The general manager of Lakeland Automobile Auction, at and prior to the time of the accident, was Thomas (Rudy) Crowder. Most sales made by Lakeland Automobile Auction were made at an auction regularly conducted on Wednesday of each week. Automobiles for sale were stored on the premises of Lakeland Automobile Auction and were auctioned at the premises and under the urging of an auctioneer provided by Lakeland Automobile Auction. On some occasions, Mr. Crowder, acting for Lakeland Automobile Auction, sold vehicles "off the block" by a privately negotiated sale as distinguished from the auction method.

5. For many years prior to his death, Jeptha L. Cobb had been engaged in the business of buying and selling automobiles. Approximately four months prior to his death, he established a relationship with the Lakeland Automobile Auction, Inc., through an arrangement which he and Mr. Crowder developed. Under this arrangement, Mr. Cobb purchased used automobiles and would bring them or have them transported to the premises of Lakeland Automobile Auction for sale at auction or off the block. Under this arrangement, the titles to the automobiles were placed in Lakeland Automobile Auction. For purposes of purchasing such vehicles, Mr. Cobb had the authority to write sight drafts on the account of Lakeland Automobile Auction. Automobiles bought by Mr. Cobb under this arrangement would then be sold through the auction and any profits generated by the sale, over and above the expenses related thereto, would be split between Mr. Cobb and Lakeland Automobile Auction, Inc. on a sixty percent-forty percent basis. At the time of his death, Mr. Cobb was still engaged in efforts to buy and sell cars under this arrangement.

6. The defendant Greyhound Rent-A-Car, Inc. is a corporation which, through various outlets in the State of Florida, rents automobiles. This defendant also engages in the business of selling its vehicles after the same have been rented for a period of time. It maintains a sales office in Miami, Florida. At and before the time of the accident referred to above, Lloyd Marston and Eric Flippen were in charge of the Miami sales office of Greyhound Rent-A-Car, Inc. Mr. Marston was the supervisor of the sales operation conducted from that office. At and prior to the time of the aforesaid accident, the defendant Greyhound Rent-A-Car, Inc. had entrusted a substantial number of vehicles to Lakeland Automobile Auction, Inc. for purposes of sale either at the auction or off the block. No instructions were ever given by personnel connected with Greyhound Rent-A-Car, Inc. to Mr. Crowder (the manager of Lakeland Automobile Auction) with respect to the use of Greyhound's vehicles while in the custody of Lakeland Automobile Auction, Inc. When the vehicles were offered at auction, Mr. Marston, of Greyhound Rent-A-Car, Inc., was usually present; however, Mr. Marston was not present at the auction conducted by Lakeland Automobile Auction on 7 July 1971, and no vehicles of Greyhound Rent-A-Car, Inc. were sold on that date, although there was vehicles belonging to Greyhound Rent-A-Car, Inc. on the premises of Lakeland Automobile Auction at that time.

7. The vehicle which was involved in the accident described above was a Ford Torino bearing 1970–1971 Fla. Tag No. 1E30527. The vehicle carried the designation in the records of defendant Greyhound Rent-A-Car, Inc. as Vehicle No. T5125. This vehicle was delivered to the premises of Lakeland Automobile Auction by defendant Greyhound Rent-A-Car, Inc. for purposes of sale sometime before 23 June 1971. The vehicle was offered for sale at the auction on 23 June 1971, but was not sold on that date. Mr. Marston was present for that auction. After the auction was over, Mr. Marston left the premises of the Lakeland Automobile Auction and returned to his office in Miami, and left the vehicle in question in the custody of Lakeland Automobile Auction, Inc. for purposes of sale at the next auction, along with seven other vehicles belonging to defendant Greyhound Rent-A-Car, Inc. Sometime after 23 June 1971, Mr. Cobb began to use the above described Ford Torino. Some use of the vehicle by Mr. Cobb was in furtherance of his activities as a car buyer under the arrangement previously described between himself and Lakeland Automobile Auction, Inc.

8. William Lupton, a managerial employee of the defendant Greyhound Rent-A-Car, Inc., was stationed at a Greyhound rental office in Tampa, Florida. Mr. Lupton was called from the Greyhound sales office in Miami, Florida either by Mr. Marston or by Mr. Flippen, and told to pick up seven cars at the Lakeland Automobile Auction premises. This call was made on or about the 9th of July 1971. Mr. Lupton sent a truck to the premises of Lakeland Automobile Auction which picked up six vehicles. Mr. Lupton also sent a spare driver who removed a seventh vehicle from the premises. The Ford Torino, however, which was driven by Mr. Cobb at the time of the accident, was not among the vehicles removed.

9. Defendant Greyhound Rent-A-Car, Inc., by delivering the Ford Torino to the premises of Lakeland Automobile Auction, Inc. on or before 23 June 1971, and by leaving the vehicle and its keys on those premises in the custody of Lakeland Automobile Auction, Inc., thereby voluntarily relinquished control of the vehicle to Lakeland Automobile Auction, Inc., and by necessary implication consented to the vehicle's use beyond the immediate control of Greyhound Rent-A-Car, Inc. The evidence does not, however, indicate by a preponderance thereof that any agent of defendant Greyhound Rent-A-Car, Inc. gave express or implied consent to the use of the Ford Torino by Mr. Cobb.

10. Lakeland Automobile Auction, Inc., through its manager in Lakeland, Florida, knew that the Ford Torino was being used by Mr. Cobb for personal transportation at and before the time of the accident above described and consented to such use either expressly or by acquiescence.

11. Two of the state court civil actions arising out of the accident on 11 July 1971 have been settled. In order to effect the settlement, the defendant St. Paul Fire and Marine Insurance Company, on behalf of Manheim Services Corporation and Lakeland Automobile Auction, Inc. and Thomas (Rudy) Crowder contributed $75,000.00 to the injured persons or persons claiming under them. The defendant Old Republic Insurance Company contributed $65,000.00 on behalf of Greyhound Rent-A-Car, Inc., and Greyhound Rent-A-Car, Inc. contributed an additional $10,000.00. Greyhound Rent-A-Car, Inc. contributed the additional $10,000.00, because the policy of Old Republic Insurance Company under which Greyhound Rent-A-Car Inc. is an insured has a deductible of $10,000.00. Volkswagen Insurance Company, on behalf of the Estate of Jeptha L. Cobb, tendered into the registry of the Circuit Court of Volusia County—the state court in which the civil actions were pending and in which two other civil actions arising out of the accident are still pending—the limits of its aforementioned policy, to-wit, $100,000.00. All parties to this action have stipulated

that the amount of the aforesaid settlement is reasonable and that the settlement was made without prejudice to the rights of any of the parties hereto to seek a declaration of their respective rights arising out of their relationships with one another in connection with the aforesaid accident.

*Conclusions of Law*

1. This Court has jurisdiction of the action under 28 U.S.C. § 1332.

■■ 2. Jeptha L. Cobb, deceased, as driver of the vehicle involved in the above described collision, was legally liable to the injured persons for damages proximately resulting from his negligent operation of the vehicle. Lakeland Automobile Auction, Inc., as bailee of the automobile involved, was also liable to the injured persons for such damages because of its consent to the operation of the vehicle by Jeptha L. Cobb. Frankel v. Fleming, Fla.1954, 69 So.2d 887; Martin v. Lloyd Motor Company, Fla. App.1960, 119 So.2d 413. The defendant Greyhound Rent-A-Car, Inc. is likewise liable for such damages because of its status as the legal owner of the vehicle who voluntarily relinquished the vehicle for use beyond its immediate control and because the use of the vehicle by Cobb was not a "species of conversion or theft." Susco Car Rental System of Florida v. Leonard, Fla.1959, 112 So.2d 832; Thomas v. Atlantic Associates, Inc., Fla.1969, 226 So.2d 100; Ivey v. National Fisheries, Inc., Fla.App.1968, 215 So.2d 74.

3. The basic problem presented by this action is the apportionment of responsibility for the damages arising out of the collision among the three insurance carriers which are parties hereto. None of the parties has called to the Court's attention a Florida statute or a contractual provision which is clearly dispositive.

■■■ 4. Florida case law has established the principle that the carrier for the owner is primarily liable and has no right of indemnification from the driver of the vehicle or its carrier.

Roth v. Old Republic Insurance Company, Fla.1972, 269 So.2d 3. As this Court understands the *Roth* opinion, it is based on the policy of Florida law as developed in the dangerous instrumentality doctrine to require an owner to provide financial responsibility for his motor vehicles operated on the public highways of the state with his "consent."

■■ 5. In the present case, Greyhound Rent-A-Car, Inc. was the owner of the vehicle involved. It held legal title and the right to possession of the vehicle. At the time of the accident, however, Lakeland Automobile Auction, Inc. also had certain incidents of ownership with respect to the vehicle. As bailee of the vehicle, Lakeland Automobile Auction, Inc. had custody of the vehicle or what is essentially the same thing, the right to custody. At the time of the accident, the active tort-feasor, Mr. Cobb, was on a personal mission not in furtherance of the interest of either Greyhound Rent-A-Car, Inc., or Lakeland Automobile Auction, Inc. Neither Greyhound Rent-A-Car, Inc. nor Lakeland Automobile Auction, Inc. was shown to have been negligent in respect to the accident or the entrustment of the vehicle. Both are liable to the injured persons solely because of the application of the dangerous instrumentality doctrine of Florida tort law. Because of the foregoing, the relationship of Greyhound Rent-A-Car, Inc. and Lakeland Automobile Auction, Inc., and that of their respective carriers to the liability arising out of the accident is indistinguishable on any rational basis. This Court concludes that both Greyhound Rent-A-Car, Inc. and Lakeland Automobile Auction, Inc. should be treated as an "owner" of the vehicle involved for purposes of resolving the rights and duties among the carriers. It, therefore, follows that St. Paul Fire and Marine Insurance Company, the carrier for Lakeland Automobile Auction, Inc., and Old Republic Insurance Company, the carrier for Greyhound Rent-A-Car, Inc., are both primarily and jointly liable for the payment of the damages to the injured

third parties and ought to divide the payment thereof in the same proportion as the applicable policy limits of each bears to the aggregate of the applicable policy limits of the policies of the two carriers. Both carriers should reimburse the plaintiff Volkswagen Insurance Company, in that proportion, for the $100,000.00 which it paid into the registry of the Circuit Court of Volusia County for the settlement of the claims of the injured persons. Compare Hartford Acc. & Ind. Co., Inc. v. Liberty M. Ins. Co., Inc., Fla.1973, 277 So.2d 775. See also Motor Vehicle Casualty Co. v. Atlantic National Ins. Co., 5 Cir. 1967, 374 F.2d 601, and note 7 at p. 603.

6. The plaintiff Volkswagen Insurance Company, as among the three carriers, is liable to the injured persons only for the excess of any liability which exceeds the coverage provided by the other two carriers.

7. Greyhound Rent-A-Car, Inc., as distinguished from its carrier, is entitled to indemnity from Luther T. Rouse, as Administrator of the Estate of Jeptha L. Cobb, and Volkswagen Insurance Company for the $10,000.00 which Greyhound Rent-A-Car, Inc. contributed to the settlement aforementioned under Greyhound's claim for common law indemnity against Jeptha L. Cobb as driver of the vehicle involved in the collision. See Fincher Motor Sales, Inc. v. Lakin, Fla.App.1963, 156 So.2d 672.

8. Greyhound Rent-A-Car, Inc.'s claimed right to "indemnification" from Lakeland Automobile Auction, Inc. proceeded on the theory as expressed in the cross-claim that Lakeland Automobile Auction, Inc. breached its bailment contract with Greyhound Rent-A-Car, Inc. by loaning the vehicle involved to Mr. Cobb. The Court concludes that the proof presented does not support such claim. There was no satisfactory proof that the use of the vehicle by Cobb was a breach of the bailment contract between Greyhound Rent-A-Car, Inc. and Lakeland Automobile Auction, Inc. or that there was negligence in the entrustment of the vehicle to Cobb. Even if such use of the vehicle by Cobb was a breach of the bailment agreement, the accident and the damages flowing therefrom were not the natural or proximate result of such breach.

9. The parties hereto have incurred expenses, including attorneys' fees, in connection with the state court actions which have heretofore been settled and claim the right to indemnification with respect to those expenses. The parties have stipulated as to the reasonableness of the attorneys' fees, but have not stipulated or agreed as to the right of indemnification with respect thereto. The Court will consider the issue of the right of the parties to indemnification for such costs and expenses upon an appropriate motion therefor filed in this cause within ten days from the date hereof. The Court will make a determination on the basis of memorandums and affidavits supporting such motions. Memorandums and affidavits in support of a motion must be filed and served with the motion. Final judgment will be entered herein by the Court after determination of any such motions. The parties may file memorandums in opposition to any such motion within five days after service of the motion to which the memorandum in opposition is directed.

10. At the conclusion of the plaintiffs' case, the defendants each moved for a dismissal on the ground that upon the facts and the law the plaintiffs had shown no right to relief. Pursuant to Rule 41(b), F.R.Civ.P., the Court declined to rule on the motions until the close of all the evidence. Said motions are hereby denied.