HOBSON, Justice.
In the course of her employment, on April 11, 1951, appellant injured her right arm by contact with a live electric wire. She had several periods of hospitalization, and extensive medical treatment by Dr. White, a physician of her employer’s selection. Dr. White called in Dr. Haverfield, a nerve specialist, who examined the patient and submitted a report. Compensation benefits were paid until January 3, 1952, when they were discontinued. Appellant later filed a claim for an increased weekly rate of compensation, benefits for permanent partial disability, medical bills and attorney fees.
Hearings were held before the Deputy Commissioner. Called as a witness, Dr. White testified that the claimant was permanently partially disabled. One Dr. Stewart, who had examined the claimant on December 12, 1951, testified for the employer and insurer that there was no permanent disability. Dr. Haverfield, the specialist, was not called as a witness and his report, which was offered in evidence, was rejected as hearsay. After the hearings, an award was made which was favorable to claimant except that it did not provide compensation for a permanent partial disability. The Deputy Commissioner was curiously noncommittal on the permanent disability issue. The only language in the award having any bearing on this issue is the following:
“Said claimant was paid compensation, based upon 60 per cent of $30 average weekly wage, or $18 .a week, from August 15, 1951, to and including January 3, 1952, at which time she had reached her maximum recovery and compensation was discontinued. Her compensation rate a week should have been $21, and for those weeks between August 15, 1951, to and including January 3, 1952, for which she was paid $18, she is entitled to an additional $3.00 a week. (Italics added.)
“It is, therefore, * * * ordered that the above named employer. * * *
“1. Pay the above named employee, Carolyn Roberts, in a lump sum forthwith, $3.00 a week for those weeks from August 15, 1951, to and including January 3, 1952.”
It will thus be seen that although, from the record, the permanent disability question was the major issue in the case, no square finding on this issue was ever made. The statement in the language we *672 have italicized, to the effect that claimant “had reached her maximum recovery” on January 3, 1952, does not dispose of the issue, since obviously the maximum recovery possible could have been reached in spite of the continued existence of a permanent disability. That the failure to make such a finding in this case is a compliance with F.S.A. § 440.25(3) (b), which provides in part that the “order rejecting the claim or making the award * * *, together with a statement of the findings of fact and other matters pertinent to the question at issue,[1] shall be file.d * * * ”, is doubtful, to say the least. The question is not, however, properly before this Court, since the parties have consistently proceeded upon the assumption that a finding of no permanent partial disability was made, apparently upon the ground that this finding was implicit in the disparity between claim and award.
The claimant appealed the award to the full Commission, upon the ground, inter alia, that the Deputy Commissioner’s “finding of no permanent partial disability” was not supported by “substantial evidence.” A divided Commission, with one member dissenting, held that the “findings” were supported by competent substantial evidence, consisting of the testimony of Dr. Stewart, and affirmed the award on the authority of U. S. Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741 and Town of Crescent City v. Green, Fla., 59 So.2d 1.
Appeal to the Circuit Court resulted in another affirmance upon the ground that the record sustained the findings of the Deputy Commissioner. This appe,al followed.
Actually, the primary question appellant has sought to have determined throughout the described procedure is a medical one. Dr. Stewart, whose qualifications were conceded, based his opinion upon the fact that his examination had disclosed no atrophy of the injured member, a factor which he considered necessarily attendant upon the disability claimed. It is uncontradicted that the claimant had long been under treatment designed to maintain muscle tone, among other things. But no historical fact with which the witness was confronted caused him to recede from his opinion, and we, with the same facts before us, are asked to say that he was wrong because atrophy could not have occurred with the treatment used. Clearly, this is far beyond the permissible boundaries of judicial notice which, in the realm of scientific fact, must be restricted to matters of universal notoriety and general understanding. See 20 Am.Jur., Evidence, Sec. 97. We must, therefore, hold that Dr. Stewart’s testimony represented “competent, substantial evidence which accords with logic and reason,” in conformity with the U. S. Casualty and Crescent City cases, cited above. We further hold that such testimony is not inconsistent with scientific facts of universal notoriety and general understanding. Of course, if from his findings the arbiter of facts has by inference drawn conclusions which are illogical, unreasonable or not in accord with facts of which the full Commission and the courts can take notice, his ruling should be rejected, but that is not the case here.
Finally, it was not error to exclude the report of Dr. Haverfield. There was no showing that this witness was not available to testify, and the report was tendered for no purpose which would bring it within a recognized exception to the hearsay rule.
Appellant’s counsel contends that the fee of $50 allowed her by the Deputy Commissioner was unreasonably low. We agree, and direct that it be increased to $150. Also, the application for attorney fees filed in this court by appellant’s counsel is granted, in the amount of $100.
Affirmed in part and reversed in part.
ROBERTS, C. J., and THOMAS and DREW, JJ., concur.

. Italics added.