[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 24, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-12823

_____

D.C. Docket No. 02-21108 CV

PRIME INSURANCE SYNDICATE, INC.,
an Illinois corporation,

Plaintiff-
Counter-defendant-
Appellee,

versus

B.J. HANDLEY TRUCKING, INC., et al.,
RICK HANDLEY,
d.b.a. Rick Handley Trucking,
RANDALL SUMMERVILLE,

Defendants-
Counter-claimants-
Appellants.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

(March 24, 2004)

Before WILSON and KRAVITCH, Circuit Judges, and GOLDBERG*, Judge.

KRAVITCH, Circuit Judge:

Appellants Rick Handley, B.J. Handley Trucking, Inc. ("Handley Trucking"), and Randall Summerville appeal the district court's order denying their motion for attorneys' fees in a declaratory action concerning coverage under an insurance contract. The issue on appeal is whether the district court correctly applied Alabama law in determining that the defendants were not entitled to recover their attorneys' fees.

I. Background

Handley Trucking, a commercial trucking business in Alabama, orally purchased from Prime Insurance ("Prime") a business Auto Liability Insurance Policy covering the period of May 17, 2000, to May 17, 2001. On May 19, 2000, before Handley Trucking received its insurance binder, Randall Summerville, a Handley Trucking employee, was involved in an automobile accident in Miami, Florida. Summerville was within the scope of his employment when his vehicle struck the vehicle of Elberta Still and Emma Stepney. Still and Stepney were

_____

*Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

injured in the accident. On May 23, 2000, Prime issued the written binder confirming the oral agreement to insure Handley Trucking.

In November 2000, Still and Stepney filed a Florida state court action against Rick Handley, Handley Trucking, and Randall Summerville. Prime Insurance disputed coverage on the grounds that Summerville was not insured under the policy, the policy did not cover accidents occurring more than fifty miles from Leeds, Alabama, and that Handley Trucking did not give timely notice of the claim to Prime. Prime filed a Complaint for Declaratory Relief in federal district court in Florida to resolve these coverage issues.

On September 6, 2002, Prime settled the Florida state court action and moved to voluntarily dismiss its federal court claim for declaratory judgment. The district court dismissed the claim, but retained jurisdiction to consider attorneys' fees. The district court subsequently held that the defendants (counter-claimants-appellants) were not entitled to recover their attorneys' fees under Alabama law. The defendants appeal.

II. Discussion

Florida's choice-of-law rules control which state's attorneys' fees laws apply to this action. LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1515 (11th Cir. 1997) (citing Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82

L.Ed. 1188 (1938)).  The underlying dispute in this case was whether Handley

Trucking's insurance contract with Prime covered the accident.  Under Florida's

choice-of-law rules, *lex loci contractus*[1] applies in contract matters, <u>Fioretti v.

Mass. Gen. Life Ins. Co.</u>, 53 F.3d 1228, 1236 (11th Cir. 1995), unless a statute

modifies or abrogates a choice-of-law rule.  <u>Brown v. Case</u>, 86 So. 684, 685 (Fla.

1920).

The appellants contend that  Fla. Stat. §§ 627.428, 627.4135 abrogate the

common-law *lex loci contractus* rule in this case.  First, the appellants argue that

Fla. Stat. § 627.428 specifically provides for attorneys' fees when an insured

successfully sues its insurer.[2]  Fla. Stat. § 627.401(2), however, provides a safe

harbor for insurance contracts not delivered in Florida nor issued for delivery in

Florida.[3]  Because the insurance policy between Prime and Handley Trucking was

---

[1] *Lex loci contractus* "provides that the laws of the jurisdiction where the contract was executed governs interpretation of the substantive issues regarding the contract." <u>Lumbermens Mut. Cas. Co. v. August</u>, 530 So.2d 293, 295 (Fla. 1988).

[2] "Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."  Fla. Stat. § 627.428.

[3] "No provision of this part of this chapter applies to. . . (2) Policies or contracts not issued for delivery in this state nor delivered in this state, except as otherwise provided in this code."  Fla. Stat. § 627.401(2).

not delivered in Florida nor issued for delivery in Florida, we hold that the safe

harbor applies to the insurance policy.[4] Thus, the appellants cannot recover

attorneys' fees under Fla. Stat. § 627.428.

The appellants claim that even if Fla. Stat. § 627.428 does not cover the

insurance policy, this insurance contract is a "contract of casualty insurance"[5] and

Florida's attorneys' fees laws apply to actions regarding casualty insurance.  See

Fla. Stat. § 627.4135 ("All contracts of casualty insurance covering subjects

resident, located, or to be performed in this state shall be subject to the applicable

---

[4] The defendants contend that actual physical delivery in another state is needed to invoke the safe harbor, and therefore, the oral agreement between Prime Insurance and Handley Trucking at the time of the accident does not fall within the safe harbor.  Celanese Coatings Co. v. American Motorists Ins. Co., 297 F.Supp. 598, 600 (S.D. Fla. 1969).  The defendants misinterpret Celanese Coatings, however, which stands for the proposition that the safe harbor does *not* apply if there is actual physical delivery in Florida.

> A strict construction of the word 'delivery' in this statute is actual physical delivery. The statute specifically contemplates a type of constructive delivery by using the words 'issued for delivery'.  In this case it is clear that the policies sued upon were not physically delivered in Florida.  The determinative question then becomes whether the policies can be said to have been 'issued for delivery' in Florida. . . .  The policies were issued in New York for delivery to the insured in New York or Kentucky.  In no case was it intended that a policy be delivered in Florida. . . . Delivery or intended delivery is the key which opens the door to the recovery of attorneys' fees. . . .  Such delivery or intended delivery is simply not present in this case. . . .  The essential fact. . . [is] that delivery of such a policy in Florida must be intended.

Id.  Thus, the safe harbor covers the insurance policy in this case because this policy (1) was not physically delivered in Florida and (2) was not intended for delivery in Florida.

[5] See Fla. Stat. § 624.605(1) (including vehicle insurance and liability insurance as types of casualty insurance).

provisions of this part and to the other applicable provisions of this code."). Again, the safe harbor provision of Fla. Stat. § 627.401(2) removes this insurance policy from the coverage of the casualty insurance provision. Sheehan v. Lumbermens Mut. Cas. Co., 504 So. 2d 776, 778 (Fla. Dist. Ct. App. 1987) (holding that "[t]he trial court found that since Ms. Feldman was located in Florida at the time of the accident, section 627.726 [currently section 627.4135] was controlling. . . . We disagree. . . . [S]ection 627.401(2) . . . limits the applicability of that section to policies issued for delivery or delivered in the state.").

Because this insurance policy falls within the coverage of the safe harbor provision of Fla. Stat. § 627.401(2) and is outside the coverage of Fla. Stat. §§ 627.428, 627.4135, *lex loci contractus* governs the substantive issues of the contract. Lumbermens Mut. Cas. Co. v. August, 530 So. 2d 293, 295 (Fla. 1988) (providing that the laws of the jurisdiction where the contract was executed governs interpretation of the substantive issues regarding the contract).

The determination of where a contract was executed is fact-intensive, and requires a determination of "where the last act necessary to complete the contract [wa]s done." Pastor v. Union Cent. Life Ins. Co., 184 F. Supp. 2d 1301, 1305 (S.D. Fla. 2002) (noting also that a contract dispute is governed by the laws of the state in which the contract was delivered). The last act necessary to complete a

6

contract is the offeree's communication of acceptance to the offeror. Buell v. State, 704 So. 2d 552, 555 (Fla. Dist. Ct. App. 1997) (citing legal encyclopedias). The district court concluded that Prime's communication of the oral binder to Handley Trucking constituted acceptance of Handley Trucking's offer to purchase insurance and, therefore, was the last act necessary to complete the contract. We agree.

The insured was an Alabama resident and located in Alabama at the time of the oral agreement. The fortuitous timing of the accident – occurring before the written policy was actually delivered – does not alter the fact that the Prime had already communicated acceptance of the contract to Handley Trucking. Therefore, the district court did not err in applying *lex loci contractus* to determine that Alabama law governed this insurance contract.

Under Alabama law, absent a contractual provision to the contrary, the insured may not recover its attorneys' fees from the insurer if the fees were incurred in a declaratory judgment action to determine coverage under a liability policy. See, e.g., Green v. Standard Fire Ins. Co., 477 So. 2d 333, 335 (Ala. 1985); Clark v. Exchange Ins. Ass'n, 161 So. 2d 817 (Ala. 1984).

Accordingly, we AFFIRM the decision of the district court.